# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | |
| | : | |
| JERMAINE MCCLARY | : | NO. 15-93 |

## MEMORANDUM OPINION

Savage, J.                                                    September 1, 2022

Moving for a reduction of sentence under the compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), Jermaine McClary, a prisoner at FCI Hazelton, contends that his asthma, sickle cell anemia, PDSD, anxiety, depression, and hernia constitute extraordinary and compelling reasons warranting a reduction of his sentence in the context of the COVID-19 pandemic.[1]  He adds that the Bureau of Prisons has failed to provide adequate medical care for his hernia.[2]  He also claims that he has been rehabilitated.[3]

The government acknowledges that McClary has three serious medical conditions: asthma, sickle cell anemia, and hypertension.[4]  It maintains that his medical conditions are well-controlled with medication and do not present a risk factor for COVID-19.[5]  The government also argues that his refusal of the COVID-19 vaccine deems him ineligible

---

[1] Mot. for Compassionate Release at 3, ECF No. 56.

[2] *Id.* at 3–4.  In his reply, McClary states: "This motion is really not about COVID-19, it's about the fact def. is not getting medical treatment."  Pl.'s Reply Br. at 2, ECF No. 63.

[3] *Id.* at 7.

[4] Government's Resp. in Opp'n to Def.'s Mot. to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), at 3, ECF No. 60 ["Resp."].

[5] *Id.* at 12–13.

for compassionate release.[6]  It contends that McClary poses a danger to the community given the nature and severity of his offenses, his lengthy criminal history, and his disciplinary record while incarcerated.[7]

McClary is 46 years old.[8]  His presentence report reflects that he suffers from asthma, sickle cell anemia, depression, and anxiety.[9]  His prison medical records document diagnoses of depression, post-traumatic stress disorder, hypertension, prediabetes, Vitamin D deficiency, mild asthma, and an inguinal hernia.[10]  On April 7, 2021, McClary refused the Pfizer vaccine.[11]

### Discussion

A court may reduce a defendant's sentence, after considering the factors set forth in 18 U.S.C. § 3553(a), if it finds that extraordinary and compelling reasons warrant a reduction and "a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).  Before ordering the release of a prisoner who presents an extraordinary and compelling reason for release, the court must determine that he is not a danger to the safety of others or the community.  18 U.S.C. § 3142(g).

Congress did not define what constitutes an extraordinary and compelling reason, leaving it to the Sentencing Commission to do so.  In its policy statement and commentary

---

[6] *Id.* at 4, 12–13.

[7] *Id.* at 18–19.

[8] *Id.* at 3.

[9] *Id.*

[10] *Id.* at 3–4; McClary BOP Medical Records, ECF No. 60 at 24, 28, 44, 47, 49, 62–63 ["Resp. BOP Med. R."].

[11] Resp. at 4.

addressing Section 3582(c)(1)(A), the Sentencing Commission set forth three specific extraordinary and compelling reasons. U.S.S.G. § 1B1.13, cmt. n. 1. Application Notes 1(A) through 1(C) detail qualifying medical, age and family circumstances.

Making it clear that these were not the only reasons that may be considered extraordinary and compelling, the Sentencing Commission added an "other reasons" category that provides a reduction may be warranted by an "extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)."  U.S.S.G. § 1B1.13, cmt. n. 1(D).  At the same time, it delegated the Bureau of Prisons ("BOP") Director to define what "other reasons" qualify under subdivision 1(D). *Id.*

We have held in other cases that a court has the authority and responsibility to determine what is an extraordinary and compelling reason for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A).[12]  We have also determined that the COVID-19 virus and its impact on the prison population in a particular case may warrant relief under Section 3582(c)(1)(A).[13]

To determine whether extraordinary and compelling reasons exist in an individual case, we consider the circumstances of the COVID-19 pandemic, the defendant's health conditions, the defendant's age, the risk of contracting COVID-19 at the defendant's facility, and whether the defendant has been vaccinated.  None of these reasons alone is extraordinary or compelling.  Health complications without a risk of COVID-19 at a

---

[12] *See U.S. v. Babbitt*, 496 F. Supp. 3d 903 (E.D. Pa. 2020); *U.S. v. Spencer*, No. 15-562, 2021 WL 565388 (E.D. Pa. Feb. 12, 2021); *U.S. v. Randall*, No. 08-8, 2021 WL 922077 (E.D. Pa. Mar. 11, 2021); *U.S. v. Avery*, No. 04-243, 2021 WL 949482 (E.D. Pa. Mar. 12, 2021); *U.S. v. Medina*, No. 15-554, 2021 WL 1581608 (E.D. Pa. Apr. 22, 2021).

[13] *See Babbitt*, 496 F. Supp. 3d; *Spencer*, 2021 WL 565388; *Medina*, 2021 WL 1581608.

particular institution do not warrant release.  Similarly, the fact that a facility may have confirmed cases of COVID-19 does not justify release if the defendant is not at risk due to age or other medical conditions, or if the defendant is fully vaccinated.  However, a combination of these circumstances may rise to the level of "extraordinary and compelling."  Hence, each case must be determined by the facts unique to the defendant.

Although McClary suffers from several medical conditions generally associated with increased risk of severe illness or death from COVID-19, the risks posed to his health are minimal.  His asthma is well-controlled with medication.  There is no indication that he needs or is receiving treatment for sickle cell anemia.  At 46 years old, his hypertension does not present a serious risk.  Moreover, there were no positive cases among the inmate population and staff at FCI Hazelton where McClary is housed.[14]  Of the inmates at FCC Hazelton, 86.3% are fully vaccinated.[15]  Therefore, we conclude these circumstances do not present an extraordinary or compelling reason justifying compassionate release.[16]

---

[14] Federal Bureau of Prisons, "COVID-19 Coronavirus" (updated daily), https://bit.ly/2SOsQpe.

[15] Id.; Federal Bureau of Prisons, "FCI Hazelton," https://www.bop.gov/locations/institutions/haf/; Federal Bureau of Prisons, "USP Hazelton," https://www.bop.gov/locations/institutions/haz/.

[16] Our reasoning is consistent with that of numerous other courts in the Third Circuit that have denied compassionate release motions brought by defendants with underlying conditions increasing the risk of severe illness from COVID-19 that were offered but refused vaccination.  See, e.g., United States v. Joseph, No. 10-664, 2021 WL 5198094, at *3–5 (E.D. Pa. Nov. 9, 2021) ("The Court recognizes that Joseph[, who suffers from diabetes, latent tuberculosis, and obesity,] is within his rights to voluntarily refuse the vaccine; however, Joseph 'cannot then claim that the threat posed by COVID-19 represents an extraordinary and compelling reason warranting his early release.'" (citation omitted)); United States v. Tommaso, No. 15-602-2, 2021 WL 4941490, at *4 (E.D. Pa. Oct. 22, 2021) ("Tommaso[, who suffers from hypertension,] is well within his rights to refuse vaccination.  However, he cannot then claim that he must be released due to a risk of health complications that could be virtually eliminated by that same vaccine." (citations omitted)); United States v. Hardison, No. 18-168, 2021 WL 4132435, at *3 (E.D. Pa. Sept. 10, 2021) ("While Mr. Hardison was, of course, within his rights to make this choice, his argument that he risks death or serious injury from COVID-19 'rings somewhat hollow in light of his affirmative choice to refuse a highly-effective vaccine.'" (citation omitted)); United States v. Robinson, No. 15-596, 2021 WL 3537296, at *3 (E.D. Pa. Aug. 11, 2021) ("Accordingly, I find that his refusal to accept a vaccine negates any 'extraordinary and compelling reason' for relief that he would otherwise have, such as his obesity."); United States v. Kassis, No. 19-449, 2021 WL 3489816, at *3 (E.D. Pa. Aug. 9, 2021) ("If the Court was to hold

In his reply, McClary backs off on his claim based on COVID-19 risk, instead complaining that he is not receiving medical treatment for a hernia.  There is no evidence that he received inadequate medical care for his hernia.  He had the hernia repaired on December 14, 2017.[17]  After a recurrence, the hernia was repaired again on January 29, 2020.[18]  McClary did not complain about the hernia again until April 2021.  On April 15, 2021, he complained of left sided groin pain that he rated as an eight out of ten in severity.[19]  There was no redness, edema, or lesions noted.[20]  He was prescribed ibuprofen for the pain and advised to schedule a sick call if his symptoms worsened or did not improve.[21]  Apparently, his symptoms abated.  Over a year passed before McClary's next complaint about his hernia.  On May 6, 2022, he complained that his hernia was worsening and that "[i]t feels like it is busting through the mesh."[22]  McClary

---

that the mere refusal to be vaccinated represents an extraordinary and compelling reason to warrant release, then inmates would be incentivized to refuse vaccinations.  This would be contrary to any good sense considerations of the detained individuals' or society's well-being."); *United States v. Adams*, No. 18-502-1, 2021 WL 2822939, at *2 (E.D. Pa. July 7, 2021) ("Under these circumstances, Adams voluntary refusal to 'provide self-care' and mitigate his risk of a severe COVID-19 outcome negates the otherwise compelling medical reason [(obesity)] for his release." (citations omitted)); *United States v. Ortiz*, No. 18-264, 2021 WL 1422816, at *2, *4 (E.D. Pa. Apr. 15, 2021) ("[W]hile a petitioner [with diabetes and obesity] who declines a COVID vaccine is 'within his rights to refuse any treatment he wishes to forego, he cannot simultaneously claim that he must be released because of the risk of complications while refusing a vaccine that could virtually eliminate that risk.'" (citation omitted)); *United States v. Jackson*, No. 07-40-2, 2021 WL 1145903, at *2 (E.D. Pa. Mar. 25, 2021) ("However, Jackson was offered the Moderna COVID-19 vaccine on January 6, 2021 and elected not to be vaccinated[, despite suffering from type II diabetes and obesity]. Thus it seems that Jackson has voluntarily declined to "provide self-care" and mitigate her risk of a severe COVID-19 infection.").

[17] McClary BOP Medical Records, ECF No. 59 at 53 (attached as Ex. A to Mot. for Compassionate Release) ["CR BOP Med. R."].

[18] Resp. BOP Med. R. at 63.

[19] CR BOP Med. R. at 46.

[20] *Id.*

[21] *Id.*

[22] Resp. BOP Med. R. at 24.

did not show up for a follow-up appointment on May 24, 2022.  The administrative note states that he "may report to sick call if he wishes to be rescheduled."[23]  He did not.

Even if McClary presented an extraordinary and compelling reason for compassionate release, he would not be entitled to relief under Section 3582(c)(1)(A) because he poses a danger to the community.

Before granting a motion for compassionate release based on an extraordinary and compelling reason, a court must find that the defendant "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." *Id.* § 1B1.13(2).  The applicable Section 3142(g) factors include "the nature and circumstances of the offense charged," "the history and characteristics of the person," including "the person's character, physical and mental condition, family ties, . . . community ties, past conduct, history relating to drug or alcohol abuse, [and] criminal history," and "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g).

The government argues that due to the nature and severity of his offenses, his lengthy criminal history, and his disciplinary record while incarcerated, McClary poses a danger to the community.  McClary counters that he has been rehabilitated.  Yet, he offers no information to substantiate his claim.

McClary pled guilty to two counts of possession with intent to distribute a controlled substance, one count of possession of a firearm in furtherance of a drug trafficking crime, and one count of possession of a firearm by a felon.[24]  He committed these crimes while

---

[23] *Id.* at 22.

[24] Resp. at 2–3.

on parole and while on release status for a separate conviction for which he was scheduled to self-surrender on November 28, 2014.[25]

McClary was sentenced to a prison term of 120 months followed by five years' supervised release.[26]   He has served approximately 86 months and has a five-month credit for good conduct time, for a total time served of 91 months.[27]   He is scheduled to be released on June 24, 2024.[28]  McClary has had nine disciplinary infractions in prison.[29] Given his criminal history, five are particularly relevant here.   In 2015 he received an infraction for possessing a dangerous weapon.[30]   He received two in 2019 for drugs or alcohol.[31]   In 2021, he received one for fighting and one for drugs or alcohol.[32]

McClary's criminal career started when he was just 16 years old.[33]   He has ten prior convictions spanning a period of more than twenty years.[34]   Seven were for drug related offenses and three for assault.[35]   Many were committed when he was on parole or shortly after his release from prison.[36]

We find that McClary presents a danger to others and the community.   He is a habitual offender.   His crimes and criminal history are serious.   His convictions relate to

---

[25] *Id.* at 18–19; Presentence Investigation Report ¶ 42 n.7.

[26] Resp. at 2–3.

[27] *Id.* at 3.

[28] *Id.*

[29] *Id.*

[30] *Id.*

[31] *Id.*

[32] *Id.*

[33] Presentence Investigation Report ¶ 33.

[34] *Id.* ¶¶ 33–42.

[35] *Id.* ¶¶ 33–35, 37–42.

[36] *Id.* ¶¶ 33–42.

drugs and violent offenses.  Overtime, his drug offenses became more serious.  He started by selling a small amount of cocaine to a police officer at age 16.[37]  When he was 22, he was found with ten individually packaged bags of cocaine base (crack) with a total weight of 4.1 grams.[38]  At age 36, he was arrested with 18 ziplock baggies of cocaine base (crack), seven ziplock bags of marijuana, and one sandwich bag of marijuana.[39]  In this case, he had 2.47 grams of cocaine, 2.76 grams of heroin, and 11.89 grams of marijuana.[40]  He was also in possession of firearms.[41]  Given his lengthy criminal history and prison disciplinary record, McClary poses a threat to the community.  Thus, even if he presented an extraordinary and compelling reason for compassionate release, he would not be entitled to release.

## Conclusion

The COVID-19 pandemic and the low risk of McClary contracting COVID-19 at FCI Hazelton do not constitute an extraordinary and compelling reason to grant a sentence reduction.  McClary is not at risk of severe illness or death while continuing to serve his sentence at FCI Hazelton.  Therefore, we shall deny his motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A).

---

[37] *Id.* ¶ 33.

[38] *Id.* ¶ 39.

[39] *Id.* ¶ 42.

[40] *Id.* ¶ 12 n.3

[41] *Id.* ¶¶ 11–13.